UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>CLINT WOODLEY, et al.,<br><br>Defendants. | Case No. 24-cv-01003-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 31, 37, 38 |

Plaintiff Relator LLC ("Relator") is a limited liability company whose members are small business owners and taxpayers, formed with the express purpose of identifying corporations who have needlessly and illegally profited from government guaranteed loans that were available as a result of the COVID-19 pandemic. It filed this lawsuit against Elcor Electric, Inc. ("Elcor"), Clint Woodley, the Chief Executive Officer of Elcor, and Sheila Markert, the Controller of Elcor, and ten Doe defendants (together, "defendants"), alleging that they violated the False Claims Act (the "FCA"). Specifically, Relator argues that Elcor fraudulently applied for and received a loan under the Paycheck Protection Program ("PPP loans") by misidentifying the number of its employees, as well as its economic need during the pandemic. Defendants now move to dismiss Relator's Complaint ("Compl.") [Dkt. No. 1] pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6).

There is no need for a hearing on this motion. The complaint is not barred by the public disclosure bar because the disclosure cited by defendants does not contain an explicit accusation of wrongdoing. Relator has stated a plausible claim for fraud against Elcor under Federal Rule 9(b). The claims against the individual defendants, however, are not plausible given Rule 9(b)'s heightened pleading standard. Accordingly, the motion to dismiss is GRANTED in part with

leave to amend.

## BACKGROUND

### I.      Factual Background

In March of 2020, Congress signed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") into law. Complaint ("Compl.") [Dkt. No. 1] ¶ 23. As a component of the CARES Act, the Small Business Administration ("SBA") acquired funding and authority to create a loan program designed to support small businesses through the challenges brought on by COVID-19. *Id.* ¶¶ 23–24. As pertinent here, this included Section 1102 of the CARES Act, which allowed the SBA to guarantee certain loans under the "Paycheck Protection Program" ("PPP"). *Id.* ¶ 25. An eligible business, including a "self-employed individual, individual contractor, or sole proprietorship with no employees or [an Applicant that] had employees for whom it paid salaries and payroll taxes or paid independent contractors" could apply for, receive, and ultimately qualify for forgiveness for, a loan ("PPP loan"). SAC ¶ 30 (citing SBA Application Form 2484).

The application process required an applicant to make several certifications, including that they understood the contents of each form, that an applicant was eligible to receive a loan, that the PPP loan would "be used only for business-related purposes," that the applicant was undergoing economic uncertainty, that the PPP loan would be used "to retain workers and maintain payroll or make mortgage interest [or similar] payments," and, finally, that the contents of the application were "true and accurate." *Id.* ¶¶ 31–37. Importantly, Relator asserts, recipients of PPP loans could apply to have their principal and interest fully forgiven, meaning that the borrower would "owe nothing" and would have "no obligation to repay the PPP loan." *Id.* ¶ 39. To receive such forgiveness, however, borrowers were required to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loans were "spent on payroll costs and other permitted expenses," and that "at least 60% of the loan proceeds had been spent on payroll costs." *Id.* ¶ 39 (referencing SBA Form 3508 (the "Loan Forgiveness Certification")).

Relator alleges that Elcor is an electrical contracting company based in Los Angeles,

California. *Id.* ¶¶ 5, 14. During the pandemic, electrical contractors were considered essential workers and "by and large continued to work . . . and in fact were in high demand." Opposition to Motion to Dismiss ("Oppo.") [Dkt. No. 37] at 2 (citing Compl. ¶¶ 9, 46). Despite such demand, Elcor applied for a PPP loan in the amount of $8,138,700.00, which was approved by the SBA on April 16, 2020. Compl. ¶ 43. Defendants signed the loan applications, "thereby endorsing the [loan] Understanding Certification," which provided that they "understood the rules and guidelines of the PPP, including, without limitation the rules regarding use of proceeds and the certifications made." *Id.* ¶ 47.

On its loan application, Elcor indicated that it had 240 employees. *Id.* ¶ 43. Relator maintains that this was a "gross[] exaggerat[ion]," as "Elcor's own LinkedIn page show[ed] that the company ha[d] only 62 employees." *Id.* ¶ 7. Information from ZoomInfo also indicated that Elcor employed "32 people." *Id.* Relying on these sources, Relator now maintains that Elcor padded the true number of employees on its PPP loan application to obtain more money that it was not entitled to. *See id.*

Relator's Complaint also points out that PPP loans are limited to an "$100,000 annual payroll cap," which was reiterated in Elcor's loan documents. *See id.* ¶ 8. On their application, Elcor claimed that "100% of [the loan would] be used for payroll expenses" for its purported 240 employees. *See id.* However, this would equate to "an average annual salary of $162,774.00," a "clear and obvious violation of the $100,000 salary cap." *Id.* Relator maintains that "Woodley and Markert, as the executives at ELCOR," took advantage of this application process to obtain excess money to "pad their inflated salaries, while actual American small businesses suffered." *Id.* And because "electrical contractors, like defendants, [] thrive[d] financially" during the pandemic, Relator concludes that "defendants did not need the loan," as there would be "no business interruption." *Id.* ¶ 9.

As a result of its alleged misrepresentations, Elcor received the loan, and ultimately applied for and received forgiveness for the loan. *Id.* ¶ 43. Elcor's loan was forgiven on December 21, 2021. *Id.* In sum, Relator alleges that by filling out the application, and therefore necessarily responding affirmatively to each of the required certifications, Elcor acquired the PPP

3

loan by fraudulent means. *See id.* ¶¶ 43–54. The Complaint asserts one cause of action against Elcor, for violation of the False Claims Act. *Id.* ¶¶ 55–62; 31 U.S.C. § 3729(a)(1)(A–B). Relator seeks a remedy of treble damages, civil penalties, and attorney fees and costs.

## II.     Procedural History

On February 20, 2024, Relator filed suit on behalf of the United States pursuant to the *qui tam* provisions of the False Claims Act. *See* Compl.; 31 U.S.C. § 3730(b). On January 27, 2025, Judge Alsup filed an Order Granting Notice of Election to Decline Intervention.[1] *See* Dkt. No. 13 (noting that the "United States ha[d] declined to intervene in this action"). Defendants then moved to dismiss Relator's complaint on December 8, 2025. *See* Motion to Dismiss ("Mot.") [Dkt. No. 31]. On December 22, 2025, Relator filed an opposition. *See* Relator LLC's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss ("Oppo.") [Dkt. No. 37]. Defendants replied on December 29, 2025. *See* Defendants' Reply Brief in Support of Motion to Dismiss ("Repl.") [Dkt. No. 38]. I held oral argument on February 4, 2026.

## LEGAL STANDARD

### I.     Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

---

[1] Although it is not a party to the action, the United States remains the real party in interest. The *qui tam* provisions of the False Claims Act allow for Relator to maintain this action in the name of the United States. *See* 31 U.S.C. § 3430(b)(1).

4

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**II.    Rule 9(b)**

"Because they involve allegations of fraud, qui tam actions under the FCA must meet not only the requirement of Rule 8, but also the particularity requirements of Rule 9." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011). Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard where a complaint alleges fraud or mistake. Under FRCP 9(b), to state a claim for fraud, a party must plead with "particularity the circumstances constituting the fraud," and the allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.2009) (citation omitted). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). "In addition, the plaintiff must set forth what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citation omitted) (cleaned up).

# DISCUSSION

## I. PUBLIC DISCLOSURE BAR

Defendants first argue that Relator's complaint is barred by the public disclosure bar. Mot. at 7–15. The False Claims Act ("FCA") provides several circumstances under which "[t]he court shall dismiss an action or claim . . . unless opposed by the Government." 31 U.S.C. § 3730(e)(4)(A). As relevant here, I must dismiss the action:

> [I]f substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> > (i) in a Federal criminal, civil, or administrative hearing in which the Government or agent is a party;
> > (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> > (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of information.

*Id.* And, pursuant to the statute, an "original source" is:

> [A]n individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) [sic] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

*Id.* at (e)(4)(B).

To determine whether a FCA claim is barred under this provision, therefore, I must follow a two-pronged approach. First, I must determine whether "the same allegations or transactions" alleged were "publicly disclosed" through a channel specified in the FCA statute. *Id.* at (e)(4)(A). And, if I determine that the same allegations or transactions were so publicly disclosed, I must then address whether an "original source" brought the action. *Id.* at (e)(4)(B). If I conclude that "the same allegations or transactions" were not "publicly disclosed" through any of the channels specified in the FCA, I need not address the second prong of the inquiry.

### a. Whether There Has Been a Qualifying "Public Disclosure"

In order to qualify as a "public disclosure" under the provisions of the FCA, three things must be true: "(1) the disclosure at issue occurred through one of the channels specified in the

1  statute; (2) the disclosure was public; and (3) the relator's action is based upon the allegations or
2  transactions publicly disclosed." *Malhotra v. Steinberg*, 770 F.3d 854, 858 (9th Cir. 2014)
3  (internal quotation marks and citations omitted). The Ninth Circuit has recognized that "for a
4  relator's allegations to be based upon a prior public disclosure, the publicly disclosed facts need
5  not be identical with, but only substantially similar to, the relator's allegations." *United States ex*
6  *rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 574 (9th Cir. 2016).

7       The parties dispute whether Relator's complaint includes facts that are all "publicly
8  available data published by the SBA as part of the Paycheck Protection Program (PPP) Loan
9  Database Records." Mot. at 7. Defendants maintain that the four sources Relator relies on—
10 including (1) the SBA App and PandemicOversight.gov website, (2) news media, (3) LinkedIn,
11 and (4) ZoomInfo—are information "already in the public domain," and that the complaint
12 provides "no additional insight, context, or original contribution." *Id.* at 8–10.

13      "Courts have interpreted 'allegation' to refer to a direct claim of fraud, and 'transaction' to
14 refer to facts from which fraud can be inferred." *Mateski*, 816 F.3d at 571 (citing *U.S. ex rel. Zizic*
15 *v. Q2Administrators, LLC*, 728 F.3d 228, 235–36 (3d Cir. 2013)) ("An allegation of fraud is an
16 explicit accusation of wrongdoing. A transaction warranting an inference of fraud is one that is
17 composed of a misrepresented state of facts plus the actual state of facts."). Defendants assert that
18 the PandemicOversight.gov website, along with LinkedIn and ZoomInfo, contain information
19 about the number of employees working at Elcor, the primary purpose of the loan, and the loan
20 amount and approval date. *See* Mot. at 7–15. In their view, these facts give rise to what is
21 required to demonstrate public allegations or transactions of fraud sufficient to fall within the
22 scope of the public disclosure bar. *Id.* I disagree.

23      Because the "publicly disclosed information does not contain an explicit accusation of
24 wrongdoing," I cannot conclude that there is an allegation of fraud present on the identified
25 websites. *Mateski*, 816 F.3d at 571. Indeed, the information available on these websites and
26 databases "provide[] no information from which the true state of facts can be inferred." *United*
27 *States ex rel. Relator LLC v. iLink Empl's Co.*, No. 22-cv-01004-RGK, 2024 WL 3892980. And
28 "the information disseminated was so innocuous that there was no public disclosure of a

7

transaction or allegation of fraud in the first instance, as required under the FCA." *Mark ex rel. United States v. Shamir USA, Inc.*, No. 20-56280, 2022 WL 327475 (9th Cir. 2022); *but see United States ex rel. Relator, LLC v. Kootstra*, No. 22-cv-00924-TLN, 2024 WL 3666470, at *3–*5 (E.D. Cal. Aug. 6, 2024) (concluding the opposite).Even though Relator's complaint is factually wrapped up in the information publicly available on these websites, this information alone simply does not disclose any allegation or transaction of fraud. Relator's False Claims Act claim is not barred by the public disclosure bar, and I need not determine whether Relator is an "original source" of the information at issue. Accordingly, I decline to grant defendants' motion on that basis.

## II.   FAILURE TO STATE A CLAIM

To adequately bring an action pursuant to the False Claims Act, Relator must allege: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Lungwitz*, 616 F.3d at 997 (citation omitted). Defendants assert that Relator's complaint fails to adequately allege the first two elements. I disagree as to Elcor.

### a.   Failure to Allege Fraud

Defendants assert that the Complaint fails to "identify which allegation of fraud pertains to which defendant" and instead "cluster[s] the individual defendants together and with the company." Mot. at 15. This is true for the individual defendants. The allegations of fraud fail to plead the "who" with particularity. *See Vess*, 317 F.3d at 1106. Additionally, defendants maintain that the Complaint describes how "the defendants" falsified the number of jobs and violated the $100,000 salary limitation, but fails to "explain *how* Elcor actually used the funds." Mot. at 15 (emphasis in original).

Realtor's Complaint indicates that "Defendant ELCOR applied for a PPP loan" in April 2020, indicating that it had "240 employees." Compl. ¶ 43. However, based on its research, Relator alleged that these were "false statements" that were "intentional and not an accident." *Id.* ¶ 44. That is plausible for pleading purposes. "Defendants signed the loan applications, thereby endorsing the Understanding Certification, which mean[t] that they agreed that they understood

8

the rules and guidelines of the PPP, including, without limitation[,] the rules regarding use of proceeds and the certifications made." *Id.* ¶ 47. The Complaint then concludes that because loan forgiveness was conditioned on "inaccurate" information provided by defendants on the PPP loan application, defendants "knowingly made or used . . . [their] false or fraudulent records" to receive their loan from the government. *See id.* ¶¶ 57–62.

The Complaint does not allege with specificity the "who" of the purported fraud. The Complaint indicates how Elcor "abused the PPP program, from misrepresenting their economic need for the loan, to misrepresenting the number of employees, to willfully ignoring their ineligibility, to maximizing the amount of the loan based on false statements and then obtaining loan forgiveness." *Id.* ¶ 46. But the rest of the Complaint then proceeds to use "defendants" in broad language, seemingly discussing activities relating to each individual defendant. *See, e.g.*, *id.* ¶ 47 ("Defendants signed the loan applications . . ."); *id.* ¶ 51 ("[W]hen Defendants made the No False Statements Certification, that certification was false."); *id.* ¶ 52 ("Defendants actively pursued and obtained loan forgiveness."); *id.* ¶ 54 ("As a result of the forgiveness, Defendants have not repaid the loan and have kept the proceeds, and the loan has been repaid with money from taxpayers . . ."). It does not explain how defendants Woodley and Markert were connected to the fraudulent scheme except that they were signatories to the PPP loan. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)). Because Relator fails to establish each defendant's connection to the fraud in question, it has not met its pleading requirements under Rule 9(b).

Relator's Complaint similarly does not allege the "how" of the fraud with particularity. As defendants point out, many of Relator's statements are rife with conclusory allegations with regards to the defendants' knowledge and intent. Such statements include:

- "Defendants knowingly and intentionally made many materially false statements to the government and bank to obtain the loan." (¶ 12)

9

- "Woodly and Market, as the executives at ELCOR, used US taxpayer dollars to pad their inflated salaries, while actual American small businesses suffered." (¶ 12)
- "Defendants PPP Loan violated the $100,000 salary cap by a sizeable margin, with the PPP Loan being 62.7% over the limit. These false statements were intentional and not an accident." (¶ 44)

While Relator argues that the "how" of the fraud is established by the "false certifications to the bank processing the application on behalf of the SBA, which was entitled to rely on those (false certifications)," that information is not enough with respect to the individual defendants as currently pleaded in the Complaint. Oppo. at 16. It is not enough, for example, for Relator to point out that electrical contractors were "in high demand and able to secure lucrative contracts" during the pandemic as evidence that the individual defendants believed that Elcor did not need a loan at that time. *See* Compl. ¶ 9. Nor do suggestions from LinkedIn and ZoomInfo about Elcor's approximate number of employees suggest that the individual defendants were engaged in fraudulent conduct. *See id.* ¶ 6.[2]

The fraud allegations against the individual defendants do not meet the Rule 9(b) pleading standard. Relator's Complaint against them is DISMISSED for failure to allege fraud. I recognize that the Relator is not an insider. He should allege what he knows and explain why he is unable to be more specific about knowledge, intent, and other matters that would make the claims plausible.

### b. Failure to Plead Scienter

The same applies to the allegations about scienter. Relator must plead facts that demonstrate that defendants acted "with knowledge of the falsity and with intent to deceive." *U.S. ex rel. Hendow v. Univ. Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006) (citing *Hagood v. Sonoma Cnty. Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996)). Unlike the "circumstances constituting fraud," intent and knowledge "may be alleged generally." Fed. R. Civ. P. 9(b). Generally, however, does not mean that Relator can rely on conclusory statements. The FCA defines an

---

[2] For example, it is my understanding that the number of employees listed on LinkedIn includes only those who have LinkedIn accounts and indicate that they work for that company. I cannot find that this information by itself—especially given the lack of data showing its accuracy—forms a basis for finding Relator has met its pleading standards under Rule 9(b).

individual sufficiently liable for scienter to include when that person has (1) actual knowledge of the information; (2) acts in deliberate ignorance of the truth; or (3) acts in reckless disregard of the truth. Oppo. at 16–17; 31 U.S.C. § 3729(b)(1)(A). But to adequately plead any one of the meanings of scienter, "[a] complaint . . . must set out sufficient factual matter from which a defendant's knowledge of fraud might be reasonably inferred." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 679–80 (9th Cir. 2018). Relator again fails to allege such facts here against the individual defendants.

For example, Relator's statement that defendants "knowingly and intentionally made many materially false statements to the government and bank to obtain the loan" does not demonstrate scienter against the individuals. Compl. ¶ 12. I agree with defendants that such a statement fails to provide "particular facts about the *how* and the *why* Relator alleged that Defendants knew and intentionally made false statements." Mot. at 16. As I have explained, such statements are conclusory and do not state a claim for scienter under Rule 9(b), as Relator is required to do.

## CONCLUSION

Defendants' motion to dismiss Relator's Complaint is GRANTED in part WITH LEAVE TO AMEND. Relator shall have twenty-one (21) days to file an Amended Complaint that states plausible claims against the individual defendants.

**IT IS SO ORDERED.**

Dated: February 3, 2026

William H. Orrick
United States District Judge